UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| IN RE: | Case No. 18-31635-LTB |
|---|---|
| VR KING CONSTRUCTION, LLC, *et al.,* [1] | Chapter 7 |
| Debtor | |

## TRUSTEE'S APPLICATION FOR AUTHORITY TO EXECUTE AND ENTER INTO EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

NOW COMES the Trustee, A. Burton Shuford, by and through his undersigned attorney, and respectfully shows unto the Court the following:

1. Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code with the Bankruptcy Court for the Western District of North Carolina on October 31, 2018. On April 11, 2019, the case was converted to Chapter 7, thereby creating a Chapter 7 bankruptcy estate (the "**Estate**") and A. Burton Shuford was appointed trustee in said Chapter 7 case.

2. Among the assets of the Estate is a parcel of real estate known as 7329 Boswell Rd., Charlotte, NC (the "**Property**").

3. In order to assist the Trustee in the sale of the Property the Trustee contacted Brian T. Bain of Keller Williams Realty ("**Keller**").

4. The Trustee believes it would be in the best interest of the Estate and its creditors for the Trustee to enter into an Exclusive Right to Sell Listing Agreement with Keller in regard to the Property, said agreement to expire on January 15, 2021 (the "**Agreement**"). A copy of the Agreement is attached hereto as EXHIBIT A and incorporated herein by reference. The Agreement provides that the Property would be listed in Multiple Listing and further that Keller will be paid a commission of Six (6%) percent of the gross sales price of the Property. The Agreement further provides that the listing price for the Property will be $250,000.00. The Trustee reserves the right to change the listing price, in consultation with the real estate agent named herein, should market conditions so require.

5. The Agreement provides that Keller will be a dual agent such that other agents employed by Keller may represent potential buyers of the Property. However, the Agreement further provides that Keller is authorized to designate an individual agent to solely and exclusively represent the interests of the Trustee and the Estate. The designated agent will be Brian T. Bain.

---

[1] This case has been substantively consolidated with the following cases: VR Investments, LLC 18-31637 and Baranko Enterprise, Inc. 18-31638.

6.  The Trustee recommends that the court approve the Agreement as set forth above on the terms set out above, with all commissions, as are all other fees and expenses, to be subject to final approval of the Bankruptcy Court, in connection with approval of a sale of the Property.

WHEREFORE, the Trustee prays that the Court enter an order approving the Exclusive Right to Sell Listing Agreement for the real estate located at 7329 Boswell Rd., Charlotte, NC with all final commissions and fees to be reviewed and approved in conjunction with an Application seeking approval of a sale of the Property.

This 20th day of July, 2020.

                                          /s/ A. Burton Shuford
                                        A. Burton Shuford, NCBN 10035
                                        4700 Lebanon Road, Suite A-2
                                        Mint Hill, NC  28227
                                        Direct Dial:  (980) 321-7000; bshuford@abshuford.com
                                        Attorney for the Trustee

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
[Consult "Guidelines" (Form 101G) for guidance in completing this form]

This EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT ("Agreement") is entered into between A Burton Shuford, Trustee as Seller(s) ("Seller") of the property described below (the "Property"), and Keller Williams University as Listing Firm ("Firm"). The individual agent who signs this Agreement shall, on behalf of the Firm, be primarily responsible for ensuring that the Firm's duties hereunder are fulfilled; however, it is understood and agreed that other agents of the Firm may be assigned to fulfill such duties if deemed appropriate by the Firm. For purposes of this Agreement, the term "Firm," as the context may require, shall be deemed to include the individual agent who signs this Agreement and any other agents of the Firm.

> **NOTE:** If the Property was most recently owned by a person who is now deceased, the tax listing or last recorded deed to the Property may not accurately identify the party(ies) who should be named as Seller. In such a case, the deceased owner's will, or applicable North Carolina law if the deceased owner died without a will, will determine the correct party(ies) to sign this Agreement. Advice from an NC attorney should be obtained concerning the proper party(ies) prior to completing this Agreement.
>
> If the owner of the Property is a corporation, limited liability company, trust or other legal entity, the entity should be named as Seller and a duly authorized officer, manager, trustee or other legal representative of the entity should sign this Agreement on the entity's behalf.
>
> A non-owner spouse should be named as Seller because he or she will be required in most cases to sign the deed to release certain marital rights in the Property. If a married owner has signed and recorded a pre-nuptial agreement, post-nuptial agreement, or a free trader agreement, consult an NC attorney to determine whether the non-owner spouse will be required to sign the deed.

In consideration for Firm's services and efforts to find a buyer for the Property, Firm is hereby granted the exclusive right to sell the Property on the terms and conditions set forth in this Agreement.

**Seller represents that as of the Effective Date the Seller is not (or will not be, if the Property is currently listed) a party to a listing agreement with any other real estate firm regarding the Property. Seller also represents that Seller has received a copy of the "WORKING WITH REAL ESTATE AGENTS" brochure and has reviewed it with Firm.**

1. **TERM OF AGREEMENT.**
   (a) **Term.** The term of this Agreement ("Term") shall begin on its Effective Date and shall end at midnight on its Expiration Date.
   (b) **Effective Date.** This Agreement shall become effective and the Seller and Firm's respective rights and obligations under this Agreement shall commence ("Effective Date") as follows (*check appropriate box*):
   ☒ The Effective Date shall be the date that this Agreement has been signed by both Seller and Firm
   ☐ The Property is currently listed for sale exclusively with another real estate firm. Seller represents that the current listing agreement expires on _____. The Effective Date of this Agreement shall commence immediately upon the expiration of the current listing agreement. (**NOTE:** According to Article 16 of the REALTORS® Code of Ethics: *"REALTORS® shall not engage in any practice or take any action inconsistent with exclusive representation or exclusive brokerage relationship agreements that other REALTORS® have with clients."*)
   (c) **Expiration Date.** This Agreement shall terminate at 11:59 p.m on 1/15/2021 ("Expiration Date").

2. **PROPERTY.** The Property that is the subject of this Agreement shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 3 and 4 below.
Street Address: 7329 Boswell Rd
City: Charlotte    Zip 28215
County: Mecklenburg, North Carolina

> **NOTE:** Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.

Legal Description: (Complete *ALL* applicable)
Plat Reference: Lot/Unit_____, Block/Section_____, Subdivision/Condominium_____
_____, as shown on Plat Book/Slide_____ at Page(s)_____
- The PIN/PID or other identification number of the Property is 111-143-52
- Other description:_____
Some or all of the Property may be described in Deed Book 23163 at Page 299

Page 1 of 12

Individual agent initials _____    Seller initials _____

EXHIBIT A

NOTE: THE FOLLOWING PARAGRAPHS 3 AND 4 ARE PART OF THE OFFER TO PURCHASE AND CONTRACT (FORM 2-T), A FORM WHICH IS COMMONLY USED TO PUT RESIDENTIAL REAL ESTATE UNDER CONTRACT IN NORTH CAROLINA. TO MINIMIZE THE POTENTIAL FOR DISPUTES WITH A BUYER, IT IS HIGHLY RECOMMENDED THAT SELLER AND THE INDIVIDUAL AGENT WHO SIGNS THIS AGREEMENT DISCUSS IN DETAIL AND DESCRIBE IN WRITING IN PARAGRAPHS 3 AND 4 WHAT ITEMS SELLER IS WILLING TO CONVEY AS A PART OF ANY SALE OF THE PROPERTY, WHAT ITEMS THE SELLER WOULD LIKE TO EXCLUDE FROM ANY SALE, AND WHAT ITEMS LOCATED ON THE PROPERTY THAT SELLER MAY NOT OWN.

**3. FIXTURES AND EXCLUSIONS:**

WARNING: THE PARTIES SHOULD NOT ASSUME THAT AN ITEM WILL OR WILL NOT BE INCLUDED IN THE SALE BASED ON AN ORAL OR WRITTEN STATEMENT OR UNDERSTANDING THAT IS NOT A PART OF A SALES CONTRACT. BUYER AND SELLER SHOULD BE SPECIFIC WHEN NEGOTIATING WHAT ITEMS WILL BE INCLUDED IN OR EXCLUDED FROM THE SALE.

**(a) Fixtures Are Included in Purchase Price:** ALL EXISTING FIXTURES ARE INCLUDED IN THE SALE AS PART OF THE PURCHASE PRICE, FREE OF LIENS, UNLESS EXCLUDED IN SUBPARAGRAPH (d) OR (e).

**(b) Specified Items:** Buyer and Seller agree that the following items shall be included in the sale as part of the Purchase Price, free of liens, unless excluded in subparagraphs (d) or (e) below. ALL ITEMS LISTED BELOW INCLUDE BOTH TRADITIONAL AND "SMART" VERSIONS AND ANY EXCLUSIVELY DEDICATED, RELATED EQUIPMENT AND/OR REMOTE CONTROL DEVICES.

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. NOTE: Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(c) to provide working, existing utilities through the earlier of Closing or possession by Buyer. NOTE: State law provides that it is unlawful for any person, other than the supplier or the owner of a fuel supply tank, to disconnect, interrupt or fill the supply tank with liquefied petroleum gas (LP gas or propane) without the consent of the supplier.
- Garage door openers
- Generators that are permanently wired
- Invisible fencing with power supply
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawlspace ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Thermostats
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and drapery rods and brackets, door and window screens and combination doors, awnings and storm windows

(c) **Unpairing/deleting data from devices:** Prior to Closing, Seller shall "unpair" any devices that will convey from any personal property devices (hubs, intelligent virtual assistants, mobile devices, vehicles, etc.) with which they are paired, delete personal data from any devices that will convey, and restore all devices to factory default settings unless otherwise agreed.

> NOTE: ANY FIXTURE OR OTHER ITEM DESCRIBED IN SUBPARAGRAPHS (a) AND (b) THAT WILL NOT BE A PART OF THE SALE SHOULD BE IDENTIFIED IN SUBPARAGRAPHS (d) OR (e), AS APPLICABLE.

(d) **Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey: _____

(e) **Other Items That Do Not Convey:** The following items shall not convey (*identify those items to be excluded under subparagraphs (a) and (b)*): _____

Seller shall repair any damage caused by removal of any items excluded above.

4. **PERSONAL PROPERTY.** The following personal property shall be transferred to Buyer at no value at Closing: _____

> NOTE: ANY PERSONAL PROPERTY THAT WILL BE A PART OF THE SALE SHOULD BE IDENTIFIED IN THIS PARAGRAPH. Buyer is advised to consult with Buyer's lender to assure that the Personal Property items listed above can be included in this Contract.

5. **HOME WARRANTY.** Seller ☐ agrees ☒ does not agree to obtain and pay for at settlement a one year home warranty for the Property at a cost not to exceed $ __0__. If Seller agrees to obtain and pay for a home warranty at any time, Firm hereby discloses that a fee of __0__ will be offered to Firm by the person or entity through or from which any home warranty is obtained as compensation to Firm for its assistance in obtaining the home warranty, and Seller hereby consents to Firm's receipt of such fee.

6. **LISTING PRICE.** Seller lists the Property at a price of $ __250000__ on the following terms: ☒ Cash ☒ FHA ☒ VA ☐ USDA ☒ Conventional ☐ Loan Assumption ☐ Seller Financing ☐ Other_____.
Seller agrees to sell the Property for the Listing Price or for any other price or on any other terms acceptable to Seller.

7. **FIRM'S COMPENSATION.**
   (a) **Fee.** Seller agrees to pay Firm a total fee of __6__ % of the gross sales price of the Property, ("Fee"), which OR __as approved by the Bankruptcy Court__ shall include the amount of any compensation paid by Firm as set forth in paragraph 8 below to any other real estate firm, including individual agents and sole proprietors ("Cooperating Real Estate Firm").
   (b) **Fee Earned.** The Fee shall be deemed earned under any of the following circumstances:
      (i) If a ready, willing and able buyer is procured by Firm, a Cooperating Real Estate Firm, the Seller, or anyone else during the Term of this Agreement at the price and on the terms set forth herein, or at any price and upon any terms acceptable to the Seller;
      (ii) If the Property is sold, optioned, exchanged, conveyed or transferred, or the Seller agrees, during the Term of this Agreement or any renewal hereof, to sell, option, exchange, convey or transfer the Property at any price and upon any terms whatsoever; or
      (iii) If the circumstances set out in (i) or (ii) above have not occurred, and if, within __120__ days after the Expiration Date ("Protection Period"), Seller either directly or indirectly sells, options, exchanges, conveys or transfers, or agrees to sell, option, exchange, convey or transfer the Property upon any terms whatsoever, to any person with whom Seller, Firm, or any Cooperating Real Estate Firm communicated regarding the Property during the Term of this Agreement or any renewal hereof, provided the names of such persons are delivered or postmarked to the Seller within 15 days after the Expiration Date. HOWEVER, Seller shall NOT be

Page 3 of 12

STANDARD FORM 101
Revised 5/2020
© 5/2020

Individual agent initials _____    Seller initials _____

obligated to pay the Fee if a valid listing agreement is entered into between Seller and another real estate broker and the Property is subsequently sold, optioned, exchanged, conveyed or transferred during the Protection Period.

(c) **Fee Due and Payable.** Once earned as set forth above, the Fee will be due and payable at the earlier of:

(i) Distribution of proceeds from sale of the Property by the closing attorney;

(ii) The Seller's failure to sell the Property (including but not limited to the Seller's refusal to sign an offer to purchase the Property at the price and terms stated herein or on other terms acceptable to the Seller, the Seller's default on an executed sales contract for the Property, or the Seller's agreement with a buyer to unreasonably modify or cancel an executed sales contract for the Property); or

(iii) Seller's breach of this Agreement.

(d) **Transfer of Interest in Business Entity.** If Seller is a partnership, corporation or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the Fee shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Seller at the time of the transfer.

(e) **Additional Compensation.** If additional compensation, incentive, bonus, rebate and/or other valuable consideration ("Additional Compensation") is offered to the Firm from any other party or person in connection with a sale of the Property, Seller will permit Firm to receive it in addition to the Fee. Firm shall timely disclose the promise or expectation of receiving any such Additional Compensation and confirm the disclosure in writing before Seller makes or accepts an offer to sell. (**NOTE:** NCAR Form #770 may be used to confirm the disclosure of any such Additional Compensation)

(f) **Attorney Fees and Costs.** If Firm is the prevailing party in any legal proceeding brought by Firm against Seller to recover any or all of the Fee, Firm shall be entitled to recover from Seller reasonable attorney fees and court costs incurred by Firm in connection with the proceeding, *only after the same are awarded by the U.S. Bankruptcy Court* [initials]

8. **COOPERATION WITH/COMPENSATION TO OTHER FIRMS.** Firm has advised Seller of Firm's company policies regarding cooperation and the amount(s) of any compensation that will be offered to other brokers, including but not limited to, seller subagents, buyer agents or both, brokers who do or do not participate in a listing service and brokers who are or are not REALTORS®. Seller authorizes Firm to (*Check ALL applicable authorizations*):

☐ Cooperate with subagents representing the Seller and offer them the following compensation:_____ % of the gross sales price or $_____; and/or,

☒ Cooperate with buyer agents representing the buyer and offer them the following compensation: 3_____ % of the gross sales price or $_____; and/or,

☐ Cooperate with and compensate other Cooperating Real Estate Firms according to the Firm's attached policy.

Firm will promptly notify Seller if compensation offered to a Cooperating Real Estate Firm is different from that set forth above. Agents with Cooperating Real Estate Firms must orally disclose the nature of their relationship with a buyer (subagent or buyer agent) to Firm at the time of initial contact with Firm, and confirm that relationship in writing no later than the time an offer to purchase is submitted for the Seller's consideration. Seller should be careful about disclosing confidential information because agents representing buyers must disclose all relevant information to their clients.

9. **FIRM'S DUTIES.**

> **NOTE:** In accordance with the REALTORS® Code of Ethics, Firm shall, with Seller's approval, in response to inquiries from buyers or Cooperating Real Estate Firms, disclose the existence of offers on the Property. Where Seller authorizes disclosure, Firm shall also disclose whether offers were obtained by the individual agent who signs this Agreement, another agent of the Firm, or by a Cooperating Real Estate Firm.

(a) **Best efforts to find buyer.** Firm agrees to provide Seller the benefit of Firm's knowledge, experience and advice in the marketing and sale of the Property. Seller understands that Firm makes no representation or guarantee as to the sale of the Property, but Firm agrees to use its best efforts in good faith to find a buyer who is ready, willing and able to purchase the property.

(b) **Disclosure of material terms of offer:** Seller acknowledges that real estate brokers are prohibited by N.C. Real Estate Commission rule from disclosing the price or other material terms contained in a party's offer to purchase, sell, lease, rent or option real property to a competing party without the express authority of the party making the offer.

(c) **Disclosure of material facts.** Seller acknowledges that Firm is required by law to disclose to potential purchasers of the Property all material facts pertaining to the Property about which the Firm knows or reasonably should know, and that REALTORS® have an ethical responsibility to treat all parties to the transaction honestly.

(d) **Other professional services.** Seller further acknowledges that Firm is being retained solely as a real estate professional, and understands that other professional service providers are available to render advice or services to Seller, including but not limited to an attorney, insurance agent, tax advisor, surveyor, structural engineer, home inspector, environmental consultant, architect, or contractor. Although Firm may provide Seller the names of providers who claim to perform such services, Seller understands that Firm cannot guarantee the quality of service or level of expertise of any such provider. Seller agrees to pay the full amount due for all services directly

Page 4 of 12

Individual agent initials _____  Seller initials [initials]

STANDARD FORM 101
Revised 5/2020
© 5/2020

*only after the same is awarded by the*
*U.S. Bankruptcy Court* —AH—

to the service provider whether or not the transaction closes. Seller also agrees to indemnify and hold Firm harmless from and against any and all liability, claim, loss, damage, suit, or expense that Firm may incur either as a result of Seller's selection and use of any such provider or Seller's election not to have one or more of such services performed.

(e) **Providing agreement to listing service.** Seller acknowledges that the rules of any listing service of which Firm is a member or in which any of Firm's agents participate may obligate Firm to provide a copy of this Agreement to any such listing service at its request, and Seller consents to Firm providing a copy of this Agreement in the event of any such request.

**THE AGENT (FIRM) SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY. FURTHER, REALTORS® HAVE AN ETHICAL DUTY TO CONDUCT SUCH ACTIVITIES WITHOUT RESPECT TO THE SEXUAL ORIENTATION OR GENDER IDENTITY OF ANY PARTY OR PROSPECTIVE PARTY.**

_____ *(initial)* Seller acknowledges that Seller has been made aware of each Firm duty described above in this paragraph.

**10. MARKETING.**

(a) **Submission to Listing Service.** Firm shall submit pertinent information concerning the Property to any listing service of which Firm is a member, or in which any of Firm's agents participate, in accordance with the rules of any such listing service. Seller authorizes Firm (i) to furnish to the listing service notice of all changes of information concerning the Property authorized in writing by Seller, (ii) upon execution of a sales contract for the Property, to notify the listing service of the pending sale and the expiration date of any due diligence period, and (iii) upon closing of the sale, to disseminate sales information, including sales price, to the listing service, appraisers and real estate brokers.

(b) **Commencement of Marketing.** The Firm is authorized to commence marketing the Property as described in subparagraph (c) below on the Effective Date OR, if selected ☐ on (insert date only if applicable) _____ ("Delayed Marketing Date"). If a Delayed Marketing Date is selected, Seller understands and acknowledges (i) that listing service rules may prohibit the Property being previewed or shown by Seller or any real estate agent, including Firm's agents, prior to the Delayed Marketing Date, and (ii) that listing service rules may prohibit any Public Marketing of the Property before the Delayed Marketing Date except as may be permitted under "Coming Soon" Advertising in subparagraph (c) below. "Public Marketing" includes, but is not limited to, flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and applications available to the general public. Firm is obligated to present to Seller any offers on the Property that may be submitted to Firm prior to the Delayed Marketing Date.

> **NOTE: IT IS IN THE BEST INTEREST OF MOST SELLERS TO GET THE HIGHEST POSSIBLE PRICE ON THE BEST TERMS FOR THEIR PROPERTY, AND MAXIMIZING EXPOSURE OF THEIR PROPERTY ADVANCES THAT INTEREST. ACCEPTING AN OFFER ON THE PROPERTY BEFORE IT IS FULLY EXPOSED TO THE WIDEST GROUP OF POTENTIAL BUYERS MAY DENY SELLER THE BEST OPPORTUNITY TO ATTRACT OFFERS AT THE HIGHEST PRICE AND BEST TERMS.**

(c) **Marketing Authorization.** Seller authorizes Firm *(Check ALL applicable sections)*:
- ☒ **Signs.** To place "For Sale," "Under Contract," "Sale Pending," or other similar signs on the Property (where permitted by law and relevant covenants) and to remove other such signs.
- ☒ **Open Houses.** To conduct open houses of the Property at such times as Seller and Firm may subsequently agree.
- ☒ **Advertising Other Than On The Internet.** To advertise the Property in non-Internet media, and to permit other firms to advertise the Property in non-Internet media to the extent and in such manner as Firm may decide.
- ☐ **"Coming Soon" Advertising.** To market the Property as "Coming Soon," commencing on the Effective Date, in any media Firm may in its discretion select, provided that any "Coming Soon" advertising shall be conducted in accordance with any restrictions and requirements of any listing service in which the Property will be included, a copy of which ☐ are ☐ are not attached to this Agreement.
- ☒ **Internet Advertising.** To display information about the Property on the Internet either directly or through a program of any listing service of which the Firm is a member or in which any of Firm's agents participate. Seller further authorizes other firms who belong to any listing service of which the Firm is a member or in which any of Firm's agents participate to display information about the Property on the Internet in accordance with the listing service rules and regulations, and also authorizes any listing service of which the Firm is a member or in which any of Firm's agents participate to use, license or sell to others information about the Property entered into the listing service. Seller specifically authorizes the display of the address of the Property, automated estimates of the market value of the Property and third-party comments about the Property. If seller desires to limit or prohibit Internet advertising as set forth above, seller must complete an opt-out form in accordance with listing service rules.

> **NOTE:** NCAR Form #105 may be used to limit or prohibit Internet advertising and explains how such limitations may or may not be effective.

   (d) **Lock/Key Boxes.** The Seller ☒ does ☐ does not authorize Firm to place lock/key boxes on the Property.

   (e) **Seller Acknowledgement.** Seller acknowledges and understands that while the marketing services selected above will facilitate the showing and sale of the Property, there are risks associated with allowing access to and disseminating information about the Property that are not within the reasonable control of the Firm, including but not limited to:
   (i) unauthorized use of a lock/key box,
   (ii) control of visitors during or after a showing or an open house, including the taking and use of photographs and videos of the Property
   (iii) inappropriate use of information about the Property placed on the Internet or furnished to any listing service in which the Firm participates, and
   (iv) information about the Property placed on the Internet by or through any listing service in which the Firm participates which is inaccurate or dated, or information about the Property which may remain on the Internet following the Expiration Date, including but not limited to photographs.

Seller acknowledges and understands that neither Firm nor its agents have control over information about the Property that has been placed on the Internet in connection with the marketing of the Property for sale, whether by or through a listing service or otherwise, including but not limited to photographs, and that any such information will not be removed.

Seller agrees that Seller is solely responsible for securing all Seller valuables (cash, jewelry, firearms, etc.), medications, tools, and other items of personal property during the Term of this Agreement.

Seller therefore agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by Firm's negligence arising directly or indirectly out of any such marketing services.

> **WARNING:** IT MAY BE A CRIME UNDER FEDERAL AND STATE LAWS TO LISTEN TO OR RECORD AN ORAL COMMUNICATION THROUGH THE USE OF ANY ELECTRONIC, MECHANICAL, OR OTHER DEVICE WITHOUT THE CONSENT OF A PARTY TO THAT COMMUNICATION. If there is a video/audio/surveillance device(s) on the Property, Seller is advised: (i) that no audio surveillance device may be turned on during any showings, open houses, investigations, examinations or inspections of the Property; and (ii) that the placement of any video surveillance device should not violate a visitor's reasonable expectation of privacy.

   (f) **Office Exclusive.** ☐ *(Check only if applicable)* Seller withholds consent for the listing to be disseminated to other participants of any listing service of which Firm is a member, or in which any of Firm's agents participate. Seller understands and acknowledges that: (i) the rules of any such listing service may require that the listing be filed with the listing service or that the listing service be notified of the listing, but that the listing will not be disseminated to the listing service's participants, and (ii) the listing service may require Firm to provide a certification signed by Seller that Seller does not desire the listing to be disseminated by the listing service. Seller further understands and acknowledges that listing service rules may require that the listing be submitted to the listing service and disseminated to its participants within one (1) business day if any Public Marketing of the Property occurs (see subparagraph (b)).

> **NOTE:** If Public Marketing of an office exclusive is not permitted by applicable listing service rules, the Delayed Marketing Date in subparagraph (b) should be left blank or "N/A" inserted and none of the marketing options in subparagraph (c) should be selected.

11. **EARNEST MONEY.** Unless otherwise provided in the sales contract, any initial and additional earnest money deposits and any other earnest monies paid in connection with any transaction shall be held by the Firm, in escrow, until the consummation or termination of the transaction. Any earnest money forfeited by reason of the buyer's default under a sales contract shall be divided equally between the Firm and Seller. In no event shall the sum paid to the Firm because of a buyer's default be in excess of the fee that would have been due if the sale had closed as contemplated in the sales contract. In accordance with NC General Statutes Section 93A-12, if a dispute regarding the return or forfeiture of any earnest money deposit arises between Seller and the buyer, the escrow agent holding the deposit may deposit the disputed monies with the appropriate Clerk of Court following written notice to the parties. In the event of any such dispute, Seller directs Firm to disclose Seller's last known mailing address to the escrow agent upon request to enable the escrow agent to comply with the notice requirement of such law.

Page 6 of 12

STANDARD FORM 101
Revised 5/2020
© 5/2020

Individual agent initials _____   Seller initials _____

**12. SELLER REPRESENTATIONS.**
   (a) **Flood Hazard Disclosure/Insurance.** To the best of Seller's knowledge, the Property ☐ is ☒ is not located partly or entirely within a designated Special Flood Hazard Area. The Seller ☐ does ☒ does not currently maintain flood hazard insurance on the Property.
   (b) **Synthetic Stucco.** To the best of Seller's knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system," commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows: N/A
   (c) **Owners' Association.** (Complete ONLY if the Property is subject to regulation and/or assessment by an owners' association.)
      (i) ☐ The Residential Property and Owner's Association Disclosure Statement is required: The name, address and telephone number of the president of the owners' association or the association manager is: N/A

Owners' association website address, if any: _____

The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____
      (ii) ☐ New Construction or the Residential Property and Owner's Association Disclosure Statement is NOT required: Seller agrees to promptly complete an Owners' Association Disclosure and Condominium Resale Statement Addendum (Standard Form 2A12-T) at Seller's expense and to attach it as an addendum to any contract for the sale of the Property.
      (iii) Seller authorizes and directs any owners' association or any management company of the owners' association to release to Firm true and accurate copies of the following items affecting the Property, including any amendments:
   - Seller's statement of account
   - master insurance policy showing the coverage provided and the deductible amount
   - Declaration and Restrictive Covenants
   - Rules and Regulations
   - Articles of Incorporation
   - Bylaws of the owners' association
   - current financial statement and budget of the owners' association
   - parking restrictions and information
   - architectural guidelines

   (d) **Termite Bond.** To the best of Seller's knowledge there ☐ is ☒ is not a termite bond on the Property. If there is a termite bond, it ☐ is ☐ is not transferable. If transferable, the transfer cost is $ _____, and the bonding company is: _____.

   (e) **Ownership.** Seller represents that Seller:
      ☐ has owned the Property for at least one year;
      ☒ has owned the Property for less than one year  As Trustee
      ☐ does not yet own the Property
If Seller does not yet own the Property, Seller agrees to promptly provide Firm information pertaining to Seller's acquisition of the Property, such as a copy of a sales contract or option for the Property, and to keep Firm timely informed of all developments pertaining to Seller's acquisition of the Property.
   (f) **Receipt of Sample Forms.**
      ☒ Seller acknowledges receipt of a sample copy of an Offer to Purchase And Contract (form 2-T) or Offer to Purchase and Contract—New Construction (form 800-T), as may be appropriate for review purposes.
      ☒ Seller acknowledges receipt of a sample copy of a Professional Services Disclosure and Election form (form #760) for review purposes.
   (g) **Current Liens.** Seller represents to the best of Seller's knowledge:
      (1) The Property ☐ is ☐ is not encumbered by a deed of trust or mortgage. *Complete any of the following where applicable:*
         (i) There is a first deed of trust or mortgage on the Property securing a loan held by:
            Lender Name: _____
            Approximate balance: $_____  Lender Phone#: _____
            Lender Address: _____
         (ii) There is a second deed of trust or mortgage on the Property securing a loan held by:
            Lender Name: _____
            Approximate balance: $_____  Lender Phone#: _____
            Lender Address: _____
         (iii) There is a deed of trust or mortgage on the Property securing an equity line of credit held by:
            Lender Name: _____
            Approximate balance: $_____  Lender Phone#: _____

Page 7 of 12

STANDARD FORM 101
Revised 5/2020
© 5/2020

Individual agent initials _____  Seller initials _____

Lender Address: _____

(2) Seller is current on all payments for the loans identified in numbered items (i), (ii) and (iii) above except as specified in (7) below.

(3) Seller is not in default on any loan identified in numbered items (i), (ii) and (iii) above and has not received any notice(s) from the holder of any loan identified in numbered items (i), (ii) and (iii) above or from any other lien holder of any kind, regarding a default under the loan, threatened foreclosure, notice of foreclosure, or the filing of foreclosure except as specified in (7) below.

(4) There are not any liens secured against the Property for Federal, State or local income taxes, unpaid real property taxes, unpaid condominium or homeowners' association fees, mechanics', laborers' or materialmen's liens, or other liens affecting the Property, and Seller has no knowledge of any matter that might result in a lien affecting the Property except as specified in (7) below.

(5) There are not any judgments against Seller affecting the Property, and Seller has no knowledge of any matter that might result in a judgment that may potentially affect the Property except as specified in (7) below.

(6) There are not any Uniform Commercial Code (UCC) fixture filings affecting the Property, and Seller has no knowledge of any matter that might result in a UCC fixture filing affecting the Property except as specified in (7) below.

(7) Specify any information, including approximate balances, required by Seller representations (2) through (6) above: Trustee makes no representations as to the amounts owed against the property with respect to any deeds of trust, tax liens, judgments, or the like.

**NOTE: Outstanding liens may affect Seller's net proceeds.**

(h) **Bankruptcy.** Seller currently:
  (1) ☒ is ☐ is not under bankruptcy protection under United States law.
  (2) ☐ is ☐ is not contemplating seeking bankruptcy protection during the term of this Agreement.

(i) **Access.** Seller represents that the Property has legal access to a public right of way. If access is by private road/easement/other, Seller further represents that there ☐ is ☐ is not an agreement regarding the maintenance of such private road/easement/other means of access. If applicable, Seller agrees to promptly provide Firm information pertaining to any such agreement.

(j) **Lease(s).** To the best of Seller's knowledge, the Property ☐ is ☒ is not subject to any lease(s). If applicable:
  (i) Seller agrees to promptly provide Firm a copy of any such lease(s) or a written statement of the terms of any oral lease(s);
  (ii) If the Property is managed by someone other than Seller, the manager's name and contact information is as follows: _____.
Seller authorizes any such manager to release and disclose to Firm any relevant information about any leases(s) and to cooperate with Firm in the sale of the Property.

(k) **FHA Appraisal.** To the best of Seller's knowledge, an FHA appraisal ☐ has ☒ has not been performed on the Property within four months prior to the Effective Date. If applicable, Seller agrees to promptly provide Firm a copy of any such appraisal if available.

**NOTE: Any such appraisal may or may not be binding on a buyer who intends to obtain FHA financing.**

(l) **Special Assessments.** To the best of Seller's knowledge, there are no Proposed or Confirmed Special Assessments (as defined in the sample contract form provided to Seller) regarding the Property except as follows (Insert "none" or the identification of such assessments, if any): _____

(m) **Manufactured (Mobile) Home.** Complete ONLY if there is a manufactured (mobile) home(s) on the Property that Seller intends to include as a part of the sale of the Property: VIN(s): _____ or ☐ VIN(s) unknown. Other description (*year, model, etc.*): _____

(n) **Fuel Tank/Fuel:** To the best of Seller's knowledge, there ☐ is ☐ is not a fuel tank(s) located on the Property. *If "yes" complete the following to the best of Seller's knowledge:*
  Ownership of tank 1: ☐ owned ☐ leased. If leased, the name and contact information of tank lessor is:

Location of tank 1:   ☐ above ground ☐ below ground
Type of fuel:         ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____
Refilling schedule:   ☐ auto-refill (*insert frequency*): _____ ☐ other (*describe*): _____
Name and contact information of fuel vendor: _____
Ownership of tank 2: ☐ owned ☐ leased If leased, the name and contact information of tank lessor is:

Location of tank 2:   ☐ above ground ☐ below ground
Type of fuel:         ☐ oil ☐ propane ☐ gasoline and/or diesel ☐ other: _____
Refilling schedule:   ☐ auto-refill (*insert frequency*): _____ ☐ other (*describe*): _____
Name and contact information of fuel vendor: _____

If, during the term of this Agreement, Seller becomes aware that any of the representations set forth in this paragraph 12 are incorrect or no longer accurate, Seller shall promptly notify Firm and cooperate with Firm in taking appropriate corrective action.

13. **SELLER'S DUTIES.** Seller agrees to cooperate with Firm in the marketing and sale of the Property, including but not limited to:
    (a) providing to Firm, in a timely manner, accurate information including but not limited to the following:
        (i) Residential Property and Owner's Association Disclosure Statement (unless exempt);
        (ii) Mineral and Oil and Gas Rights Mandatory Disclosure Statement (unless exempt); and
        (iii) Lead-Based Paint or Lead-Based Paint Hazard Addendum with respect to any residential dwelling built prior to 1978.
    (b) making the Property available for showing (including working, existing utilities) at reasonable times and upon reasonable notice;
    (c) providing Firm as soon as reasonably possible after the execution of this Agreement copies of the following documents (where relevant) in the possession of Seller:
        (1) restrictive covenants affecting the Property;
        (2) bylaws, articles of incorporation, rules and regulations, and other governing documents of the owners' association and/or the subdivision;
        (3) title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust and easements relating to the Property.

Seller authorizes (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Firm, (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Firm, and (3) the owners' association manager (or other authorized representative) to release and disclose copies of all documents referenced in subparagraphs (c)(1) and (c)(2) above. Seller acknowledges and understands that Firm is under no obligation to acquire any of the information referenced in this subparagraph (c) or to verify the accuracy of any such information that may be provided to Firm.
    (d) immediately referring to Firm all inquiries or offers it may receive regarding the Property; showing the Property only by appointment made by or through Firm; and conducting all negotiations through Firm;
    (e) executing and delivering at settlement a ~~GENERAL WARRANTY~~ **TRUSTEE'S** DEED conveying fee simple marketable title to the Property, including legal access to a public right of way, free of all encumbrances except ad valorem taxes for the current year, utility easements, rights-of-way, and unviolated restrictive covenants, if any, and those encumbrances that the buyer agrees to assume in the sales contract.

Seller represents that the Seller has the right to convey the Property, and that there are currently no circumstances that would prohibit the Seller from conveying fee simple marketable title as set forth in the preceding sentence, except as follows *(insert N/A if not applicable):* Seller is bankruptcy trustee and must get approval of the Western District of the US Bankruptcy Court for the sale of this property. Trustee will provide Trustee's Deed.

> **NOTE:** If any sale of the Property may be a "short sale," consideration should be given to attaching NCAR form 104 as an addendum to this Agreement.

    (f) providing Firm, in a timely manner, any information necessary (including any information omitted under Paragraph 12) to enable Firm to prepare an estimate of Seller's net proceeds at settlement. Seller acknowledges and understands that any such estimate is an approximation only and that Seller should verify the accuracy of the calculations.
    (g) if required by N.C.G.S. §44A-11.1, timely designating a Lien Agent, and providing Firm as soon as reasonably possible a copy of the appointment of Lien Agent.

14. **HOME INSPECTION:** Seller is advised to obtain a home inspection for the purpose of evaluating the condition of the Property in order to enhance its marketability and to help reduce concerns of prospective buyers. Seller ☐ agrees ☒ does not agree to obtain and pay for a home inspection by a licensed NC Home Inspector within __0__ days after the execution of this agreement.

☒ Seller acknowledges receipt of a copy of *Questions and Answers on: Home Inspections* by the NC Real Estate Commission.

15. **PHOTOGRAPHS AND OTHER MATERIALS:** Firm is specifically authorized to use, for any purposes whatsoever, any and all photographs, drawings, video, advertising copy or other information obtained by or provided to Firm pursuant to this Agreement (including but not limited to any information concerning the price and terms of the sale of the Property, the description of the Property and the length of time the Property is on the market) ("Materials"), both before and after the sale or, in the event there is not a sale, after this Agreement has expired. Seller shall not have or acquire any rights to use any of the Materials created by, on behalf of, or at the direction of Firm or an agent of Firm either during or after the Term of this Agreement without Firm's written consent. If Seller provides any Materials to Firm ("Seller Materials"), Seller represents that Seller owns the Seller Materials or otherwise has the legal right to provide the Seller Materials to Firm, and Seller grants to Firm and any listing service in which Firm or its agents participate a non-exclusive, perpetual license to use the Seller Materials, including the rights to display, reproduce, distribute or make derivative works

Page 9 of 12

Individual agent initials _____   Seller initials _____

STANDARD FORM 101
Revised 5/2020
© 5/2020

from the Seller Materials. Seller agrees to indemnify and hold Firm and its agents harmless for any and all claims resulting from use of the Seller Materials under the terms of this license.

**16. ADDITIONAL TERMS AND CONDITIONS.** The following additional terms and conditions shall also be a part of this Agreement: <u>All offers must be approved by the US Bankruptcy Court.</u>

_____

**17. DUAL AGENCY.** Seller understands that the potential for dual agency will arise if a buyer who has an agency relationship with Firm becomes interested in viewing the Property. Firm may represent more than one party in the same transaction only with the knowledge and informed consent of all parties for whom Firm acts.

(a) Disclosure of Information. In the event Firm serves as a dual agent, Seller agrees that without permission from the party about whom the information pertains, Firm shall not disclose to the other party the following information:
 (1) that a party may agree to a price, terms, or any conditions of sale other than those offered;
 (2) the motivation of a party for engaging in the transaction, unless disclosure is otherwise required by statute or rule; and
 (3) any information about a party which that party has identified as confidential unless disclosure is otherwise required by statute or rule.

b) Firm's Role as Dual Agent. If Firm serves as agent for both Seller and a buyer in a transaction involving the Property, Firm shall make every reasonable effort to represent Seller and buyer in a balanced and fair manner. Firm shall also make every reasonable effort to encourage and effect communication and negotiation between Seller and buyer. Seller understands and acknowledges that:
 (1) Prior to the time dual agency occurs, Firm will act as Seller's exclusive agent;
 (2) In its separate representation of Seller and buyer, Firm may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Firm;
 (3) Firm is required by law to disclose to Seller and buyer any known or reasonably ascertainable material facts. Seller agrees Firm shall not be liable to Seller for (i) disclosing material facts required by law to be disclosed, and (ii) refusing or failing to disclose other information the law does not require to be disclosed which could harm or compromise one party's bargaining position but could benefit the other party.

(c) Seller's Role. Should Firm become a dual agent, Seller understands and acknowledges that:
 (1) Seller has the responsibility of making Seller's own decisions as to what terms are to be included in any purchase and sale agreement with a buyer client of Firm;
 (2) Seller is fully aware of and understands the implications and consequences of Firm's dual agency role as expressed herein to provide balanced and fair representation of Seller and buyer and to encourage and effect communication between them rather than as an advocate or exclusive agent or representative;
 (3) Seller has determined that the benefits of dual agency outweigh any disadvantages or adverse consequences;
 (4) Seller may seek independent legal counsel to assist Seller with the negotiation and preparation of a purchase and sale agreement or with any matter relating to the transaction which is the subject matter of a purchase and sale agreement.

Should Firm become a dual agent, Seller waives all claims, damages, losses, expenses or liabilities, other than for violations of the North Carolina Real Estate License Law and intentional wrongful acts, arising from Firm's role as a dual agent. Seller shall have a duty to protect Seller's own interests and should read any purchase and sale agreement carefully to ensure that it accurately sets forth the terms which Seller wants included in said agreement.

(d) Authorization *(initial only ONE)*.

_____  _____ Seller authorizes the Firm to act as a dual agent, representing both the Seller and the buyer, subject to the terms and conditions set forth in Paragraph 17.

_____  _____ Seller desires exclusive representation at all times during this agreement and does NOT authorize Firm to act in the capacity of dual agent. *If Seller does not authorize Firm to act as a dual agent, the remainder of this paragraph shall not apply.*

(e) Designated Agent Option (*Initial only if applicable*).

*(initials)* Seller hereby authorizes the Firm to designate an individual agent(s) to represent the Seller. The individual designated agent(s) shall represent only the interests of the Seller to the extent permitted by law.

---

**NOTE:** When dual agency arises, an individual agent shall not practice designated agency and shall remain a dual agent if the individual agent has actually received confidential information concerning a buyer client of the Firm in connection with the transaction or if designated agency is otherwise prohibited by law.

---

18. **MEDIATION.** If a dispute arises out of or related to this Agreement or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. If the need for mediation arises, the parties will choose a mutually acceptable mediator and will share the cost of mediation equally.

19. **WIRE FRAUD WARNING.**

> IF SELLER'S PROCEEDS WILL BE WIRED, IT IS RECOMMENDED THAT SELLER PROVIDE WIRING INSTRUCTIONS AT CLOSING IN WRITING IN THE PRESENCE OF THE ATTORNEY. IF SELLER IS UNABLE TO ATTEND CLOSING, SELLER MAY BE REQUIRED TO SEND AN ORIGINAL NOTARIZED DIRECTIVE TO THE CLOSING ATTORNEY'S OFFICE CONTAINING THE WIRING INSTRUCTIONS. THIS MAY BE SENT WITH THE DEED, LIEN WAIVER AND TAX FORMS IF THOSE DOCUMENTS ARE BEING PREPARED FOR SELLER BY THE CLOSING ATTORNEY. AT A MINIMUM, SELLER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO PROVIDE THE WIRE INSTRUCTIONS. THE WIRE INSTRUCTIONS SHOULD BE VERIFIED OVER THE TELEPHONE VIA A CALL TO SELLER INITIATED BY THE CLOSING ATTORNEY'S OFFICE TO ENSURE THAT THEY ARE NOT FROM A FRAUDULENT SOURCE.
>
> SELLER SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED. TO ENSURE THAT SELLER'S CONTACT IS LEGITIMATE, SELLER SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, SELLER'S REAL ESTATE AGENT OR ANYONE ELSE.
>
> Seller acknowledges and understands that there are risks associated with wire transfers that are not within the reasonable control of Firm, and Seller hereby agrees to release and discharge Firm and Firm's agents from any and all claims, demands, rights and causes of action of whatsoever kind and nature not caused by gross negligence of Firm or Firm's agents arising directly or indirectly out of any wire transfer Seller sends or receives/was to receive in connection with any real estate transaction in which Firm represents Seller.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 11 of 12

Individual agent initials _____ Seller initials _____

STANDARD FORM 101
Revised 5/2020
© 5/2020

**20. ENTIRE AGREEMENT/CHANGES/TERMINATION.** This Agreement constitutes the entire agreement between Seller and Firm and there are no representations, inducements, or other provisions other than those expressed herein. This Agreement may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument. All changes, additions, or deletions to this Agreement must be in writing and signed by both Seller and Firm. Seller acknowledges and understands that this Agreement constitutes a binding contract between Seller and Firm. Although Seller may at any time withdraw from the fiduciary relationship existing between Seller and Firm, the contract created by this Agreement may not be terminated by Seller or Firm prior to its Expiration Date without legally sufficient cause. Any such termination shall be by mutually-acceptable written agreement signed by both Seller and Firm. Seller and Firm each acknowledge receipt of a signed copy of this Agreement.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

Seller: A Burton Shuford, Trustee    Signature [signed]    Date: 07/16/2020

Contact Information:  Home ___  Work ___  Cell (980) 321-7000  Email bshuford@abshuford.com

Mailing Address: ___

Seller: ___    Signature ___    Date ___

Contact Information:  Home ___  Work ___  Cell ___  Email ___

Mailing Address: ___

Entity Seller: ___ (Name of LLC/Corporation/Partnership/Trust/etc.)

By: ___    Date: ___

Name: ___ Print Name    Title: ___

Contact Information: Home ___ Work ___ Cell ___ Email ___

Mailing Address: ___

Firm: Keller Williams University    Firm License Number: C13247    Firm Phone: 704-409-4700

Office Address: 8520 Cliff Cameron Drive, Suite 100    Charlotte, NC 28269

By: ___ Individual Agent Signature    Individual License Number: 278890    Date ___

Agent Phone: 704-724-7890    Fax: ___    Email: brian@theramseygroup.net

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>VR KING CONSTRUCTION, LLC, *et al.,* [1]<br><br>Debtor | Case No. 18-31635-LTB<br>Chapter 7 |

## NOTICE OF TRUSTEE'S APPLICATION FOR AUTHORITY TO EXECUTE AND ENTER INTO EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT AND NOTICE OF OPPORTUNITY FOR HEARING

A. Burton Shuford, by and through counsel, has filed a Motion as described above. A copy of said Application is attached hereto. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)** If you do not want the court to grant relief requested in the attached Motion, or if you want the court to consider your views on the Application, then on or before **14 days from the date of this notice** you or your attorney must file with the Court a written response to the Application which response must comply with local Bankruptcy Rule 9013-1 at:

Clerk United States Bankruptcy Court
401 W. Trade Street
Charlotte, NC 28202

If you mail your response to the Court for filing, you must mail it early enough so that the court will receive it on or before the date stated above. You must also mail a copy to:

A. Burton Shuford
Attorney at Law
4700 Lebanon Road, Suite A-2
Mint Hill, NC 28227

No hearing will be held on this Application unless a response is timely filed and served, in which case, the Court will conduct a hearing on **August 12, 2020 at 9:30 a.m.**, at the United States Bankruptcy Court, 401 West Trade Street, Charlotte, North Carolina. No further notice of this hearing will be given. If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Application and may enter an order granting the requested relief.

This 20th day of July, 2020.

/s/ A. Burton Shuford
A. Burton Shuford, NCBN 10035
4700 Lebanon Road, Suite A-2
Mint Hill, NC  28227
Direct Dial:  (980) 321-7000; bshuford@abshuford.com

---

[1] This case has been substantively consolidated with the following cases:  VR Investments, LLC 18-31637 and Baranko Enterprise, Inc. 18-31638.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>VR KING CONSTRUCTION, LLC, *et al.*, [1]<br><br>Debtor | Case No. 18-31635-LTB<br>Chapter 7 |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of by depositing copies of *TRUSTEE'S APPLICATION FOR AUTHORITY TO EXECUTE AND ENTER INTO EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT* and *NOTICE OF OPPORTUNITY FOR HEARING* by either Electronic Case Filing as indicated below or in the exclusive care and custody of the United States Postal Service, with proper postage thereto affixed, addressed to the parties listed on the attached Exhibit "A".

Shelley K. Abel, US Bankruptcy Administrator          VIA ELECTRONIC CASE FILING

Robert Lewis, Jr., Counsel for Debtor                 VIA ELECTRONIC CASE FILING

VR King Construction, LLC
c/o Vinroy Reid
626 Char-Meck Lane
Charlotte, NC 28205

This 20th day of July, 2020.

                                                  /s/ A. Burton Shuford
                                                  A. Burton Shuford, NCBN 10035
                                                  4700 Lebanon Road, Suite A-2
                                                  Mint Hill, NC 28227
                                                  Direct Dial:  (980) 321-7000; bshuford@abshuford.com
                                                  Attorney for the Trustee

---

[1] This case has been substantively consolidated with the following cases:  VR Investments, LLC 18-31637 and Baranko Enterprise, Inc. 18-31638.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0419-3<br>Case 18-31635<br>Western District of North Carolina<br>Charlotte<br>Mon Jul 20 14:48:33 EDT 2020 | U.S. Bankruptcy Administrator Office<br>402 W. Trade Street<br>Suite 200<br>Charlotte, NC 28202-1673 | VR King Construction, LLC<br>626 Char-Meck Lane<br>Charlotte, NC 28205-7245 |
| Charlotte Division<br>401 West Trade Street<br>Charlotte, NC 28202-1633 | CHS University Parent Hospital (NPO)<br>c/o PMAB, LLC<br>4135 S. Stream Blvd., Ste. 4<br>Charlotte, NC 28217-4523 | CHS Urgent Care-Eastland (NPO)<br>c/o PMAB, LLC<br>4135 S. Stream Blvd., Ste. 4<br>Charlotte, NC 28217-4636 |
| CMG Eastland Urgent Care (NPO)<br>c/o PMAB, LLC<br>4135 S. Stream Blvd., Ste. 4<br>Charlotte, NC 28217-4636 | Capital One (NPO)<br>15000 Capital One Dr.<br>Richmond, VA 23238-1119 | Carolina Pathology Clinical (NPO)<br>c/o Financial Data Systems<br>1638 Military Cutoff Rd.<br>Wilmington, NC 28403-5751 |
| Chase<br>710 S. Ash St., Ste. 200<br>Glendale, CO 80246-1969 | (p)JPMORGAN CHASE BANK N A<br>BANKRUPTCY MAIL INTAKE TEAM<br>700 KANSAS LANE FLOOR 01<br>MONROE LA 71203-4774 | Chrysler Capital (NPO)<br>Attn: Bankruptcy Dept.<br>P. O. Box 961278<br>Fort Worth, TX 76161-0278 |
| City of Charlotte<br>P. O. Box 1316<br>Charlotte, NC 28201-1316 | David G. Guidry<br>Rabon Law Firm, PLLC<br>225 E Worthington Avenue Suite 100<br>Charlotte NC 28203-4868 | Duke Energy<br>c/o Online Collections<br>P. O. Box 1489<br>Winterville, NC 28590-1489 |
| Duke Vinyl Products, Inc.<br>304 W. 32nd St.<br>Charlotte, NC 28206-2278 | Fern E. De Jonge, Esq. (NPO)<br>7718 Flatlands Ave., 2nd Fl.<br>Brooklyn, NY 11236-3528 | Hazelyn Mills<br>7329 Boswell Rd.<br>Charlotte, NC 28215-4502 |
| Home Depot<br>2455 Paces Ferry Rd.<br>Atlanta, GA 30339-6444 | Internal Revenue Service<br>P.O. Box 7317<br>Philadelphia, PA 19101-7317 | Internal Revenue Service (NPO)<br>Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346 |
| Internal Revenue Service (NPO)<br>Teresa Driver<br>1677 Westbrook Plaza<br>Winston-Salem, NC 27103-3065 | JPMorgan Chase Bank, N.A.<br>P. O. Box 47020<br>Atlanta, GA 30362-0020 | James H. Henderson<br>1120 Greenwood Cliff<br>Charlotte, NC 28204-2821 |
| James H. Henderson<br>The Henderson Law Firm<br>1120 Greenwood Cliff<br>Charlotte, NC 28204-2821 | Jenny Holman<br>5970 Fairview Road, Suite 650<br>Charlotte, NC 28210-2100 | Marty E. King<br>5054 Gatsby Cir.<br>Rock Hill, SC 29732-7909 |
| Mecklenburg County Tax Collector<br>Bob Walton Plaza<br>700 E. Stonewall St.<br>Charlotte, NC 28202-2780 | Mid-Atlantic Emergency Medical (NPO)<br>c/o Optimum Outcomes, Inc.<br>2651 Warrenville Rd.<br>Downers Grove, IL 60515-5544 | Miranda Reid (NPO)<br>3054 Chaffey Cir.<br>Decatur, GA 30034-4308 |

| | | |
|---|---|---|
| NY State Dept. of Taxation and Finance (NPO)<br>Civil Enforcement Division<br>W. A. Harriman Campus<br>Albany, NY 12227-0001 | Neil D Jonas<br>Brock and Scott, PLLC<br>8757 Red Oak Blvd., Suite 150<br>Charlotte, NC 28217-3977 | North Carolina Department of Revenue<br>Bankruptcy Unit<br>P.O. Box 1168<br>Raleigh, NC 27602-1168 |
| North Carolina Department of Revenue (NPO)<br>301 McCullough Drive<br>Charlotte, NC 28262-3310 | North Carolina Department of Revenue (NPO)<br>P.O. Box 871<br>Raleigh, NC 27602-0871 | Ocwen<br>P. O. Box 24738<br>West Palm Beach, FL 33416-4738 |
| Thais Patricia Moran (NPO)<br>6740 Vernedale Glen Dr.<br>Charlotte, NC 28212-8438 | Tran Law Firm PLLC<br>4850 Old Pineville Road<br>Unit A<br>Charlotte, NC 28217-2255 | U.S. Securities Exchange<br>Office of Reorganization<br>950 East Paces Ferry Road, N.E.<br>Suite 900<br>Atlanta, GA 30326-1382 |
| Verol Reid<br>2556 Brentwood Pl.<br>Charlotte, NC 28208-7048 | Vinroy W. Reid<br>P.O. Box 5035<br>Charlotte, NC 28299-5035 | WGIV 1370 AM (NPO)<br>Home Builder<br>9349 China Grove Ch. Rd.<br>Pineville, NC 28134-8531 |
| Wells Fargo Card Services Visa (NPO)<br>P. O. Box 10347<br>Des Moines, IA 50306-0347 | Y2 Yoga (NPO)<br>212 S. Tryon St., Ste. 375<br>Charlotte, NC 28281-0033 | Y2 Yoga Cotswold, LLC<br>James H. Henderson<br>The Henderson Law Firm<br>1120 Greenwood Cliff<br>Charlotte, NC 28204-2821 |
| A. Burton Shuford<br>4700 Lebanon Road,<br>Suite #A-2<br>Mint Hill, NC 28227-8265 | Edward P. Bowers<br>219-A Wilmot Dr.<br>Gastonia, NC 28054-4048 | Robert Lewis Jr<br>The Lewis Law Firm, P.A.<br>P.O. Box 1446<br>Suite 2330<br>Raleigh, NC 27602-1446 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Chase<br>P. O. Box 24696<br>Columbus, OH 43224 | (d)JPMorgan Chase Bank, N.A.<br>3415 Vision Drive<br>Columbus, Ohio 43219 | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)JP Morgan Chase Bank, National Association | (u)Teresa Wilson<br>One to One Realty | (u)Y2 Yoga Cotswold, LLC |

| | | |
|---|---|---|
| (d)U.S. Bankruptcy Administrator Office<br>402 W. Trade Street<br>Suite 200<br>Charlotte, NC 28202-1673 | (u)Anne D. Coley | End of Label Matrix<br>Mailable recipients   47<br>Bypassed recipients    5<br>Total                 52 |